v. Blackhawk Network, Inc. Next case is E2 Interactive v. Blackhawk Network, 2016, 1775, and 76. Ms. McGrath. May it please the Court. My name is Robin McGrath. I'm here on behalf of Appellant E2 Interactive. Your Honors, the Court should reverse the Patent Trial and Appeal Board's decision affirming the rejection of the challenged claims of the 439 patent as obvious in the Interparties re-examination proceeding brought by Blackhawk for two principal reasons. First, and most importantly, the decision is based on a construction of the claim term transaction type, as used in what we call the determining step of the claims, which construction is inconsistent not only with the plain meaning of the claims, but is also inconsistent with the way the evidence under the proper construction of the term, so that there can be no obvious misfinding. Second, there is insubstantial evidence to support the finding of motivation to combine, which is an issue that the Board never addressed, much less provided a reasoned analysis for, which it was required to do. Can you explain where in your brief to the Board you challenged the motivation to combine the various primary references with the various I don't have the site in the appendix, but there was a submission by Scott Loftusness, who was the expert in the case, who argued that the references were not analogous, and that because they're not analogous, there was actually no basis for providing a motivation to combine. But I want to submit that the Board, even though it didn't address it, the basis for the motivation to combine is the claim construction, and that's really where I want to focus on, because I think, Your Honor, if the claim transaction type, if the claim term is construed properly, everything else sort of falls in place, including motivation to combine. The plain language of the claim requires that a determination be made as to whether, quote, the requesting terminal is authorized to request the requested transaction type for the stored value card. This language tells us unequivocally three things. First, it tells us that the determination concerns the terminal's authorization to make a request, not as Blackhawk and the Board seem to believe that it's authorization to either process a transaction or ability to authorize a transaction. Counselor, your argument is that the Board's construction is too broad. Yes, sir. And yet we apply a BRI standard. That is correct. So tell us why it was not a reasonable. Sure. Even under the BRI standard, Your Honor, this Court has been very clear. It's fair to say, is it not, that the specification does not define transaction type, the term? It doesn't have an explicit definition. It doesn't say the words transaction type meet, correct? Right, I agree with you. Yes, it does not have that. But what it does have are dozens of examples and discussions and embodiments where these determinations are discussed. And in every single one of them, without exception, the transaction type is the action being requested on the card. In fact, the examiner, I'm sorry, the Board found that the determining step would cover situations where the terminal is... Could you say that one more time? It's an action on the card? Correct. An action, a redemption. Okay. A activation. We're saying basically the status of the card, you're changing it from inactive to active, active to inactive. You are taking the money and you're redeeming it for something. You're working on the card. And then the question from the determining step... So I guess why wouldn't purchases of frozen foods versus purchases of produce, fruits and vegetables, why is that not two types of transactions? It's the type of transaction is a purchase transaction, which by the way is not really what you do with a stored value card. It's a redemption transaction. And if you look at, you're redeeming the value of the card. And if you look at the specification, there is not a single example anywhere in that patent where the determination is based on what is being purchased in a redemption transaction. It makes it clear that regardless of what is being purchased, the transaction type is redemption. Without exception. If you look at the purpose in the specification of the patent, it talks about the invention provides, and this is at Appendix 40, Column 4. The present invention provides a system for managing stored value cards that provides controls over the entities that can request activation, deactivation, reloading and redemption. So it starts with that. And then the question is how are those things used throughout the patent? At no point does this patent distinguish a redemption transaction by what the card is being used to be redeemed for. We don't say it's a redemption transaction for X and that's a separate transaction type than a redemption transaction for Y. The way the board didn't look at the specification and say let's see how transaction type is defined in the specification. What it did was it said there's no explicit definition, which we know is not required, because it can be defined by implication through examples. We cite a number of cases of that. PPC PowerBoard case is a recent example of that. It said, well, those transaction types, redemption, activation, those are merely exemplary. Well, we're not trying to limit it to those transaction types. We're saying it would be any transaction type. We're just defining what a transaction type is. And then it said there are no words of exclusion. Well, we're not excluding anything. We're defining a term. From there, it dismissed the specification and it went to the extrinsic evidence that Blackhawks had submitted. First of all, procedurally, I would argue that that was incorrect. It was very Texas digitally where it's looking for a specific definition and absent a definition, it goes to the extrinsic evidence. But substantively, if you look at the extrinsic evidence on which it relied, it didn't have anything to do with stored value card transactions. It had to do with transactions involving traditional credit cards where there are integrated circuits on it, otherwise known as chip cards. And in that arc, in that evidence, what was being purchased was very relevant because there can be restrictions placed on what the card can be used to purchase. Maybe you can't use it for an ATM or maybe you can't use it for an international purpose. Why isn't all action that's taken with respect to the card action on the card? It's not action on the card. It's action through the card. In other words, you are using the card in the prior art that the board relied on. It's what you're using the card to do. You're using it to get money from an ATM. You're using it to make a purchase. You won't find anything in the patent about that being the focus with respect to the determining step. The determining step is saying, does this terminal have the authority to request that certain actions be taken on the card? Redemption, regardless of what it's being redeemed for. Activation, regardless of what kind of card it is. The difference between the 439 patent and the extrinsic evidence, which the board relied on, I believe improperly, is the focus. If you look at what the focus of that extrinsic evidence is, it's restricting what the card can be used for. You're saying the significance of what we're talking about here depends on whether Schlafly would render some of the claims obvious? Schlafly was the prior art, along with ISO 8583, that the board combined with what we Schlafly is so different in terms of the type of system, the board found that this similar system with similar results, I think that's an actual quote, when in fact Schlafly But you can use a store value card to buy bananas, right? You can, Your Honor. And Schlafly deals with buying bananas or other goods? Schlafly is a system, it's a pre-internet ordering system that has specific terminals, not POS terminals as used in the 439, but specific ordering terminals. Today we go on Amazon, right, and we place an order. Back then you couldn't do that in 1988. So they had these personal order systems where you can place orders for goods and services, and the terminal of Schlafly allowed you to do that. In the 439 patent, yes, you can use a store value card to buy a banana, not to order anything, which is what Schlafly does, but to buy a banana. But that's not what the patent is going towards. The purpose of the patent goes towards, are these terminals authorized to request a redemption transaction? It's allowing entities to control it. If we don't want that terminal to be able to authorize requests, we're going to shut it off at the transaction type. If you're arguing for a narrow definition, then aren't we getting to the question of whether Claim 2 really is different from Claim 1? This is not a claim differentiation argument. Claim 2 gives you four specific types. If the transaction types are limited to the four... They're not. They're not. No, no, no. The transaction types, any kind of transaction type, would be covered by Claim 1 over the four. The question is, what is a transaction type? It's important to note, and I want to save some time for rebuttal, but it's important to note that the board's construction goes way beyond simply distinguishing a transaction type by virtue of what the card is being redeemed for. The board's construction is any determination that is simply more generic to a determination to authorize a transaction. So way beyond anything in the specification. They don't point to the specification for anything. But even if you were to limit it to simply distinguishing a transaction type by virtue of what the card is being used to acquire, it's still overboard because you will not see anything about that in the specification. You will see no examples of that in the specification. I'd like to follow up. I understand you're making a specification-based argument, but just in terms of looking at the phrase, the term, transaction type, and we understand that it has to be something broader than the specific transaction that someone's using the card for, but a type of transaction could conceivably be any genre of transactions that's at least a level broader than the specific transaction itself. I'm just talking about the term transaction type. Sure. If you look at it in the abstract, just the word transaction type, without context, okay, I might give that to you. But in the context of the specification, you're never going to see it talking about anything but that level, the level of what you're doing to the card. And there are others than those in the specification. You might have a balance transaction. You're talking about what you're doing on the card. But you can't take a broad meaning like they did in the PPC case and just plop it into this patent without looking at what the specification says. Do you want to spend a brief time on ISO? 8583? Yes. Yes, Your Honor. ISO 8583 is a messaging spec. It's designed for the problem of allowing incompatible systems to be able to communicate together. Code 120 simply says transactions not permitted to terminal. If you were to even apply that in the stored value card section. Sounds like authorization to me. Not an authorization for whether the terminal can make a request for an action on the card. There are all sorts of teachings in the prior art where a transaction is not permitted by the terminal. We cite several of them. If the terminal is not recognized by the system and tries to do a transaction, transaction is not going to be permitted to the terminal. If the terminal tries to send something and the ID number doesn't match the retail number, transaction is not going to be permitted to the terminal. Those are teachings in the prior art that you can apply that language to. Same thing with using an MX card on a Visa terminal? Possibly, but that's not a transaction type. That's a card type. It's not a transaction type. The problem is, in the prior art, they do not teach a determination about a terminal's authority to request a transaction type. When you take that language, transaction not permitted, what you're doing is you're applying hindsight and saying, could this language apply to the 439 patent? But without the teaching of the 439 patent prior to that language, there's no basis to import that language into the patent statement. Why shouldn't transaction type be a purchase of anything, bananas, ice cream, using a particular type of card? Because in the specification of the patent, it never distinguishes the transaction type by virtue of the type of card or by virtue of what you're purchasing. All it says is the transaction type, in any instance, any card, whatever you're doing it, that's not the focus. The focus is redemption. There's something in the spec – I'm sorry. I'm sure you'll get some rebuttal time. There's something in the spec about having multiple merchants in the system and then the second merchant can be authorized to redeem cards of the first merchant and also be authorized to redeem cards from itself, from merchant number two. But if anybody were to try to use an SVC card from merchant number three on terminals in merchant number two stores, I mean that's going to get rejected, right? But not because of the determining step. So the determining step will say, is this terminal authorized to do redemptions? The answer is going to be yes because it's been programmed for that transaction type. It doesn't mean the transaction is going to get authorized. It might say, but we don't accept these cards. There's all sorts of security before an authorization is ultimately made. The determining step is a very narrow inquiry along the process, and it's, is this terminal authorized to request this transaction type? Yes. Now, there may be another check. Does this retailer take this card? No. Oops. It's going to be rejected, but not because of the determining step. Thank you, counsel. We'll give you your five minutes back for rebuttal. Mr. Armand. Good morning, and may it please the court. Orion Armand for Blackhawk Network. I'd like to focus the majority of my comments on the teachings of the specification. Each of you's counsel doesn't credit the full scope of the teachings of the specification. I'd like to draw your attention to a few particular places. In particular, the examiner found, and one of the key questions, let me step back, a key question with respect to the claim construction dispute is whether or not a transaction type authorization can be with regard to the target of the transaction. Our argument and the examiner and the board found that the target of the transaction can be considered. I'll direct your attention to a finding by the examiner from column two in the patent, and it concerns user groups. The examiner found that, in addition, it's noted that these types are based on a target. Where are we in column two? Turn to the patent, APPX 48, column two, line 37. And I was quoting from the examiner, but let me start, Judge Chen, with the language from the patent. Column two, starting at line 37, it says, it would be further desirable to provide a system that allows for selectively processing stored value card requests, such as stored value card activation, deactivation, and or incrementing, and this is the key language on lines 40 and 41, based on a table of predefined codes associated with respective user groups. Now, user is referred to in three places in the specification. At column five, line five, you have reference to a card user. At column one, line 37, you have reference to an owner or end user of the card. But that's a stored value card, right? Yes, these are all stored value cards, Your Honor. And at column 14, you have reference to either a human user or potentially another computer. So in the three places in the specification... You said you were going to show us where there were references to target use, target bananas and apples. Your Honor, the user in this case is the target. The reference in column two, as the examiner found, is to different user groups. The idea, for example... What about in column two? Okay, you gave us that one. That's in 37, right? Yes. The examiner concluded that the teaching here in column two is with respect to a target of a transaction. In other words, one group might have certain redemption authority. A different group might have different redemption authorities. So that's one example where the specification's teachings encompass consideration of a target of the transaction. We're talking about transaction type, aren't we? That's the key language. Correct. The question is the level of taxonomic degree. E2's argument is that transaction type is limited to an action at the highest level, such as redemption period. As the examiner found, however... But you just sent us to column two, 37, and it's using the word there, store value code activation, deactivation, et cetera. I don't see how that fits with your argument. Your Honor, because it's with respect to user groups. So the teaching here is that you would consider the user group as part of an authorization determination. Can you translate what that means? Are we talking about customers? Are we talking about different stores? Are we talking about different levels of redemption? I mean, what are we talking about with respect to user groups? With respect to user groups, as I mentioned, the references in the specification refers to a user as a cardholder. The person who has the stored value card who's going to use it to redeem something. And so in this example, as found by the examiner, the fact that the authorization determination is considering a user group, that is a consideration with regard to a target of the transaction. In other words, who's using the card to redeem? That's one example where the specification specifically encompasses the broader teaching that the examiner and the board found. Of course, the specification is littered with the use of the word may. We're dealing with the issue of transaction type. Correct. And you've lost me on that argument. I don't see how the user group is going to illuminate the transaction type. What does transaction type mean in the patent? Your Honor, the primary claim construction dispute between the parties is whether you can consider additional information during the transaction authorization step, such as who the user is who's redeeming something. Or, for example, whether you could consider the redemption amount. E2's argument is that you can only focus on the question of is this a redemption. The argument that Blackhawk made that the examiner and board agreed with was that there's no limitations in the teachings of the specification. And so under BRI construction, you can consider additional information. The reason that's a key issue in dispute, for example, the Schlafly reference, teaches using codes that identify groups of goods or services. So there's a dispute about whether that teaching is relevant to the transaction type determination. The reference in column 2 is relevant because it relates to the identification of a user or group, a user group, in addition to other information in making that authorization determination. In addition to the very broad language. It doesn't change the action on the card, does it? I mean, it could depending on who the user is and with respect to predefined codes. But the language is pretty clear that it provides a system that allows for selectively processing store value card requests, such as telling us what the requests are, store value activation, deactivation, et cetera. I mean, that's not, I don't see how that takes you any broader to the broader bananas or apples type transactions. Two answers with respect to that. First, I think there's no disagreement between the parties that the transaction types identified in the patent are only exemplary. So I'd submit that the transaction types here in column 2 are only exemplary, not a complete list. Second issue is that there are other teachings in the specification, in addition to the extrinsic evidence I'd like to get to, that I think encompass the question of transaction type as you're understanding it. So I'd also direct your consideration to column 11 and the discussion of figures 8 and 9. Recognized by the parties that step 160 in figure 8 is representative of the authorization determination. The discussion of figure 9, and again this is in the middle of column 11, mentions additional actions that may be added or put into the determinations in figure 8, including this authorization determination. And at line 35 of column 11, it mentions that the method 800, and again this includes the key authorization step, may include determining the purchase amount from the redemption request. Now, in the preferred embodiment mentioned in figure 9, it says that that step of looking at the purchase amount may optionally be included in step 170. But the permissive language concerning figure 9, referred to all of method 800, teaches that you could consider, as part of the terminal authorization request, a redemption amount. So, for example, you could have limits on a redemption amount, under the broad teachings here, that disallow redemptions of more than $1,000 or disallow incrementation of more than $1,000. Well, let's just assume for the moment that this paragraph is talking about additional actions beyond the authorization of the terminal for the transaction type. So, it seems like what you need to really focus on is why all the repetitive references to activation, deactivation, redemption don't necessarily channel us to thinking of transaction type on that classification level. So, here's what we know. The claims are non-limiting in terms of their description of transaction type. Claim 2, from a claim differentiation standpoint, shows us that more than the four types that are specifically enumerated are covered by claim 1. But other than that, the claims do not speak to the scope of this term. If we turn to the specification, we have examples of transaction types that are non-limiting, that are non-exclusive. E2 argues that this is a case where the fact that the same examples have been used over and over again as preferred embodiments makes the case look like the Bell Atlantic case, the DSL case, where there was an implied definition. But I think this case is more like the Ligel-Flarsheim case, where the court found that the mere fact that the preferred embodiments always used the same examples was not determinative. And in that particular case, the fact that you had broad disclosures throughout and hedge language everywhere was significant. It's also important in this case that Laurie Breitsky, the expert for Blackhawk who submitted declaration evidence, submitted two specifications, one from MasterCard and one from EMV, that related to electronic card transactions. And it's important to note that in this case, the patent itself says that these stored value cards are analogous to a credit or a debit card, except for the fact that they don't have any value until you turn them on, until you activate them. In all the other respects, they're like credit and debit cards. And the extrinsic evidence that the board turned to, the examiner turned to, found persuasive, indicates that the types of transactions that you can consider go far beyond these four very high-level transaction types. Now, that's all very important with respect to the findings concerning the Schlafly supporting reference. But something important happened during oral argument on appeal with respect to the ISO 8583 reference. Remember, this is a case where there were multiple rejections over three primary references and two supporting references, Schlafly and ISO. And with respect to ISO 8583, there's a Code 120, it's rejection to terminal. During oral argument, counsel for E2 offered what counsel for E2 claimed was an example, a scenario, that would show why a rejection to a terminal did not teach or suggest a transaction type. And after questioning counsel on that, there was an express finding that that colloquy was an admission that ISO 8583 teaches or suggests, or at least renders obvious, a transaction type limitation. Now, those findings were not based at all on the dispute that Schlafly has about whether a transaction type can include a target of a transaction. The findings on ISO are that that Code 120 teaches or suggests making terminal authorization decisions based on a transaction type. And based upon those admissions... I know, but by repeating the conclusion as the fact finding, it clouds things for me. What is the transaction type? How would you define the transaction type in the example with the Visa terminal and the Amex card? The conclusion there was that the type of card being used was the transaction type. So in other words, an Amex transaction versus a Visa transaction. So a card-based... So with respect to counsel's argument that it's an action on the card, well, there is an action on the card. You either have a Visa card or an Amex card and a rejection for one but not the other. And so what the board must have been saying is the terminal is authorized to request transactions with a Visa card but is not authorized to request purchases with an Amex card. Correct. And so those two are two different transaction types under that understanding of transaction type. Yes. The point with respect to ISO 8583 is that based upon those findings and the admissions that E2's counsel made, the claim construction issue isn't determinative of whether you affirm the board on the ISO 8583 invalidity findings because as interpreted by the examiner in the board, ISO 8583 teachings weren't focused as narrowly as Schlafly's are on particular goods and services. It was at this much higher level. So I'd encourage you to affirm the ISO 8583 invalidity findings and those grounds regardless of the position you take on claim construction. I'd like to very briefly in my remaining few seconds speak to the question regarding the obviousness findings. The board did address the arguments concerning obviousness to combine that were raised. There were only two arguments raised in E2's briefing. One was with respect to claim construction. The other was with respect to Mr. Loftusness's declarations. With respect to claim construction, the board found that the arguments were unpersuasive  With respect to Loftusness, they found them not credible. The lights went on, but you may finish your thought. Judge Lorry, just that with respect to Mr. Loftusness, the board found that his bare opinions were not entitled to much patentable weight and therefore disregarded them. So in conclusion, we'd ask you to affirm on all grounds that regardless of whether the claim construction has changed given the admissions and the findings on ISO 8583, we should at the very least affirm on those grounds that the claim construction changed and that you remand on the Flockley grounds. Thank you. Thank you, counsel. Ms. McGrath will give you your rebuttal time back. Thank you, Your Honor. I want to address this notion of user groups because it has been thoroughly misrepresented. The passage that counsel read is a reference to Figures 5 and 6, which is later discussed at Appendix 51, Column 7, Line 49. What this states, all this states, loosely related entities may be grouped for purposes of transaction authorization. We're talking about retailers, user groups for retailers. Terminal A for Merchant X and Terminal B for Merchant Y may both be members of Group A1, the members of which all have the same authorizations. This does not undermine E2's construction. It does not support the board's construction. Number two, with the price on a redemption transaction, what that's saying, it's very clear if you look at the passage that counsel pointed to. Of course you have to consider the price on a redemption transaction. You have to know how much is on the card and whether it's enough to cover what you're buying. Completely separate determination from the determining step that is at issue. Third point, the extrinsic evidence on which the board relied, again, yes, has to do with credit card transactions. And if you want to say they're analogous in some respects, fine. But what the board didn't do is look at the extrinsic evidence regarding stored value card transactions, DORF and Dawson. And in those references, they talk only about transaction types as the action. They don't use these words. But they're talking about them as the actions being requested. Aren't those references talking about credit cards and debit cards as well? No, Your Honor. The DORF is a stored value card activation and transaction system, where it talks about special codes identifying whether the transaction is either a redemption or an activation. And then it specifically says that the software reads those codes to determine the transaction type, activation versus purchase. Did E2 point to DORF and Dawson as a basis for understanding the meaning of transaction type or how one of ordinary skill at the time of the invention would understand the word transaction type as it's used with SBCs? Unfortunately, no. But it's not a waiver, has been argued, because we're not arguing a different claim construction position. We are not arguing a broader scope. We're simply making an additional argument. So you're right. The board did not look at that, only looked at the extrinsic evidence that's not in the context of stored value transaction types. But certainly, those items were of record. And certainly, the board was very aware of them because they had analyzed both DORF and Dawson in connection with Blackhawk's arguments. And if you look and are honest about how transaction type is used in both of those, it is at the highest level at the action being taken on the card. And the fourth point I want to make, Your Honor, is that if you look at the board's construction, even if you were to agree with Blackhawk, which I submit there is no support in the specification for Blackhawk's position. But if you look at the board's construction, it goes well beyond simply noting the card type, which is nowhere discussed in the patent, or what the card is being used to acquire as a transaction type. It literally says it entails any authorization determination more general than an authorization determination would need to be to authorize a specific transaction. How is that a transaction type determination? The board also says that the determination merely must be broader than or generic to a specific transaction authorization. So if there's a determination that the retailer is not authorized, according to the board's construction, that would be a transaction type determination. There's no tie whatsoever to the plain language of the claims or to the specification. And the last point I'd like to make is this admission of Visa card versus American Express and tying that to the transaction. Your Honor, that's not a determination over what actions the terminal can request. In both of those cases, whether it's a Visa or an Amex, the terminal is requesting a purchase transaction. You can't point to anything in the specification of this patent where the redemption transaction in the case of a stored value card or a purchase transaction in the case of a credit card is differentiated by virtue of the type of card being used. It's a redemption transaction, whether using a Visa, an Amex, a Starbucks, iTunes. And so, Your Honor, we submit that there is no basis for the board's construction, very broad, untethered to the spec. But even if Your Honors were to sort of narrow it to what Blackhawk has been urging, there is also no support for that anywhere in the specification. You would have to rely on extrinsic evidence, which is not relevant to the stored value card transactions. Thank you, counsel. We will take the case under advisement.